IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| RON JONES ) | |
|     Plaintiff, ) | Civil Action No. 5:09cv00065 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| CARROLL R. BAUGHER, et al., ) | By: Samuel G. Wilson |
|     Defendants. ) | United States District Judge |

This is an action filed by plaintiff, Ron Jones, in August 2009 against defendants, George and Rebecca McDaniel, CorAman Properties, LLC (the McDaniels' wholly owned member-managed limited liability company), and Heritage Title Company, LLC (the settlement agent) arising out of CorAman's purchase of Jones' residence in a foreclosure sale in 2006. Jones also named the holders of the second deed of trust, Carroll and Ressa Baugher, and the substitute trustee, Daniel Neher, as defendants, but he has settled with them.

Jones filed an earlier suit against the Baughers, Neher, and CorAman in the Circuit Court of Rockingham County, Virginia, in which Jones seeks to set aside the trustee's deed in foreclosure, to quiet title, and to recover damages for breach of contract, breach of fiduciary duty, negligence, unjust enrichment, and fraud. That suit is still pending. Here, Jones raises claims under the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq.*, against the McDaniels and CorAman, and pursuant to this court's ancillary jurisdiction (28 U.S.C. § 1367), he seeks to rehash some of the state law claims that are pending in state court. The McDaniels have moved for summary judgment as to Jones' FDCPA claims on the ground that the FDCPA's one-year statute of limitations bars those claims and on the grounds that they did not violate the FDCPA and that they are not debt collectors under that Act. The McDaniels also ask the court to decline supplemental jurisdiction over Jones' state law claims.

Jones' complaint essentially alleges two discrete acts by the McDaniels within the one-year statute of limitations. The court concludes that there are no material issues of fact for trial as to either of those alleged FDCPA violations and will enter summary judgment for the McDaniels. The court also declines to exercise supplemental jurisdiction over Jones' state law claims because they raise novel and potentially complex issues of Virginia law and because they substantially predominate over his federal claim (which remains as to CorAman, which has not moved to dismiss or for summary judgment).

**I.**

In May or June of 2004, Jones' neighbors, Carroll and Ressa Baugher, asked their real estate agent to contact Jones to see if he would be interested in purchasing a house they owned in Elkton, Virginia (the property). Jones was interested and agreed to purchase the property for $142,500. He could only make a $16,000 down payment and secure a bank loan for $114,000. To facilitate the sale, the Baughers agreed to loan Jones an additional $13,800. Consequently, at closing, Jones executed a first deed of trust to secure the bank loan and a second deed of trust to secure the loan from the Baughers.

In September 2006, Carroll Baugher informed Jones that the loan securing the second deed of trust was in default. Daniel Neher (substitute trustee on the second deed of trust) then advertised the property for sale, sold it at foreclosure in November 2006 to CorAman for $139,000, and filed his accounting with the Commissioner of Accounts of Rockingham County (the Commissioner).[1] According to his accounting, Neher paid off the first and second lien

---

[1] Neher filed his accounting pursuant to Va. Code § 26-15, which provides in pertinent part that "[w]ithin six months after the date of a sale made under any recorded deed of trust . . . the trustee shall return an account of sale to the commissioner of accounts of the court wherein

holders.

Later, Rebecca McDaniel visited the premises and informed Jones' wife[2] that CorAman had purchased the property and that the Joneses must vacate it by January 1, 2007, unless they signed a lease and paid rent to CorAman. The Joneses retained counsel but nevertheless signed a six month lease with CorAman commencing January 1, 2007, and ending June 30, 2007. The parties to that lease were the Joneses, CorAman, and Rebecca McDaniel, who signed in her corporate capacity as CorAman's "managing partner" and in her individual capacity as the listing broker.[3] In the meantime, Jones lodged an objection with the Commissioner to Neher's accounting on the ground that Neher had failed to give proper notice of Jones' default or of the acceleration of the note as required by a covenant in the second deed of trust,[4] and despite having signed a six month lease, he also stopped paying rent. In response to the Joneses' failure to pay rent, CorAman filed an unlawful detainer action in the Rockingham General District Court on April 18, 2007. The case was tried on May 21, 2007, and the General District Court awarded CorAman judgment, a writ of possession, and damages. The Joneses appealed the case to the Circuit Court of Rockingham County.

---

the instrument was first recorded."

[2] There is conflicting evidence regarding whether Mrs. Jones is actually Jones' wife. The conflict is not material, and for the sake of simplicity, the court refers to the couple as the Joneses.

[3] The court notes that Rebecca McDaniel signed some of the relevant documents under her maiden name, Rebecca Monger.

[4] Jones objected pursuant to Va. Code § 26-29, which provides in pertinent part that "[a]ny person who is interested . . . may, before the commissioner, insist upon or object to anything which could be insisted upon or objected to by him . . . ."

3

Meanwhile, the Commissioner convened a hearing concerning Jones' objections to Neher's accounting and heard evidence concerning that matter. On August 29, 2007, the Commissioner filed a report with the Circuit Court of Rockingham County detailing his findings. According to the report, the sale of the Joneses' property was invalid because the deed of trust holders had failed to give proper notice of acceleration as required by a covenant in the second deed of trust. The Commissioner noted, however, that "the purchaser at the sale may have the protection of a bona fide purchaser for value, and thus, the remedy of Mr. Jones [might] be limited to damages, if any, against [the second deed of trust holders and Neher]." Neher took exception to the Commissioner's report.

On November 7, 2007, while Neher's exceptions to the Commissioner's report were still pending in the Circuit Court of Rockingham County, that court conducted a trial *de novo* of CorAman's unlawful detainer action and on November 21, 2007, awarded CorAman judgment, possession, and damages. CorAman and the Joneses then negotiated a second written lease – a lease for one year.

A little less than a year later, on November 10, 2008, the Circuit Court overruled Neher's objections to the Commissioner's report concerning the validity of the foreclosure sale and adopted that report. With the Circuit Court's adoption of the Commissioner's report as an impetus, Jones filed suit in the Circuit Court of Rockingham County on March 17, 2009, against the Baughers, Neher, and CorAman, seeking to set aside the trustee's deed in foreclosure, to quiet title, and to recover damages for breach of contract, breach of fiduciary duty, negligence, unjust enrichment, and fraud. That suit is still pending in the Circuit Court. On August 3, 2009, Jones also filed this action under the FDCPA with supplemental state law claims closely

4

paralleling those pending in the Circuit Court.

The Joneses, nevertheless, continued to pay rent called for by the second lease with CorAman. They held over after the lease expired but ceased paying rent on August 1, 2009. CorAman responded by filing a second unlawful detainer action in the Rockingham General District Court on August 25, 2009.[5] Jones, in turn, filed a motion in this court on November 3, 2009, to stay or enjoin the approaching November 20, 2009, trial date for the second unlawful detainer action pending in the General District Court. On November 19, 2009, this court held a hearing on Jones' motion, but Jones withdrew his motion during that hearing. The Rockingham General District Court then tried CorAman's second unlawful detainer action and again awarded CorAman judgment, possession, and damages. The Joneses appealed to the Circuit Court of Rockingham County, and the second unlawful detainer suit is now awaiting trial *de novo* in that court.

In the instant action, the McDaniels have moved for summary judgment as to Jones' FCDPA claims with supporting affidavits. According to those affidavits, the McDaniels are the sole members of CorAman, a member-managed LLC; the McDaniels' attorney released the first unlawful detainer judgment after the Joneses paid the judgment; neither CorAman nor the McDaniels have "attempted to collect any debt owed or due or asserted to be due to another entity or individual"; and neither the McDaniels nor CorAman "ever communicated with any credit reporting agency regarding the Plaintiff, Mr. Jones, including any communication

---

[5] CorAman filed its second unlawful detainer action in state court after Jones filed his initial complaint in this court but before Jones amended that complaint. Neither Jones' amended complaint in this court nor the numerous exhibits attached to that complaint refer to the second unlawful detainer action in any way.

regarding the judgment awarded CorAman against Mr. and Mrs. Jones . . . ." (Aff. of Rebecca McDaniel, ¶¶ 16-18; Aff. of George McDaniel, ¶¶ 7-9.)

In opposition, Jones has filed his own affidavit and the affidavit of his wife. According to those affidavits, despite the fact that the Commissioner had already issued his report concluding that the sale was invalid, Jones nevertheless signed a lease in order to avoid being evicted from "his" property; some months the Joneses made their rent checks payable to CorAman and in other months to the McDaniels, but that in April 2009, Rebecca McDaniel requested that all future rent checks be made payable only to CorAman; and the first unlawful detainer judgment against the Joneses still appears on Mr. Jones' credit report.

## II.

Jones' amended complaint describes his federal claim for relief as a "violation of 15 U.S.C. §1692e."[6] (Am. Compl. at 16.) According to the complaint, the McDaniels made false, deceptive, or misleading representations in the collection of a debt in violation of the FDCPA. The McDaniels have moved for summary judgment as to that claim. They deny that they made false, deceptive, or misleading representations or that they were even debt collectors as defined by the FDCPA, vis-à-vis the obligations they sought to enforce. They also maintain that most of the acts complained of are not within the Act's statute of limitations.[7] The court will not recount

---

[6] Jones appended numerous documents to his complaint, which the court has relied on in ruling on the McDaniels' motion for summary judgment.

[7] Most of the amended complaint's allegations detailing Jones' 15 U.S.C. § 1692e claim are devoted to wrongdoing by the second deed of trust holders and the substitute trustee under the second deed of trust, and most of the allegations describe events dating back to 2004 through 2007. There is a one year statute of limitations under the FDCPA, which runs from "the date on which the violation occurs." 15 U.S.C. §1692k(d). Jones filed this suit on August 3, 2009.

all of Jones' assertions. It is sufficient to state that liberally read, Jones' complaint alleges two violations by the McDaniels possibly occurring within the one-year statute of limitations, which essentially distill to this: first, due to procedural irregularities (or possibly wrongdoing by the note and second deed of trust holders and the substitute trustee under that deed of trust) preceding the foreclosure sale, CorAman did not obtain valid title to Jones' property, and the McDaniels' misleading assertions to the contrary as well as their efforts to have Jones pay rent to reside there are unlawful; and second, the McDaniels have falsely reported to credit reporting bureaus and others credit information which they know or should know is false, and they have failed to communicate that the debt is disputed.[8] However, the court (A) rejects the logical underpinning of the first claim, (B) finds no factual support for the second, and (C) concludes that, in any event, the McDaniels did not act as debt collectors in relation to the obligations they sought to enforce. Accordingly, the court grants the McDaniels' motion for summary judgment.

## A.

Because Jones' complaint is somewhat hard to follow, the court looks further to his own explanation as to the first alleged violation of the FDCPA. Jones' memorandum of law explains that his complaint alleges that the McDaniels made false and misleading representations in violation of 15 U.S.C. § 1692e(4)[9] of the FDCPA in their efforts to collect rent from Jones on

---

[8] Jones concedes that he is raising no claim that the purported purchase of his property at the foreclosure sale was a violation of the FDCPA. (Plaintiff's Mem. 1/22/10 at 3.)

[9] 15 U.S.C. § 1692e prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." Subsection (4) of that section prohibits "the representation or implication that nonpayment of any debt will result in . . . the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the collector or creditor intends to take such action."

7

behalf of CorAman. Jones claims that the McDaniels' representations were false and misleading because he did not in fact owe rent and, in any event, disputed that he owed it.[10] He contends that in light of the Commissioner's report, "as approved by the Rockingham County Circuit Court," which found the foreclosure sale to be invalid, the McDaniels had "no right to demand that [he] pay them 'rent' to continue to occupy his own property."[11] (Plaintiff's Mem. 1/22/10 at 3.) He asserts that the McDaniels' collection efforts resulting in a judgment against him in the first unlawful detainer suit were improper because he did not owe the debt.[12]

The court finds that there are at least two glaring problems with Jones' reasoning. First,

---

[10] Jones positions the subject of the first unlawful detainer action as a disputed debt. However, he does not dispute that CorAman reduced the debt to a judgment against him or that CorAman did not properly validate that disputed debt. See 15 U.S.C. § 1692g(b).

[11] Jones contends that the deficiencies noted in the report invalidated the foreclosure, and he cites Bayview Loan Servicing, LLC v. Simmons, 275 Va. 114 (2008) for the proposition that he still holds title. The court notes first that whatever other significance the adoption of the Commissioner's report might have, it neither expressly nor by implication resolves the question of title. To the contrary, it expressly notes that CorAman, as a bona fide purchaser for value, may have title. Second, the Commissioner's report is no substitute for a quiet title action, and third, Bayview did not purport to resolve the rights of a bona fide purchaser. Rather, Bayview simply held that Virginia Code § 55-59.1(A) – which absolves the secured party and trustee from liability for inadvertent failures to give notice as required by the statute – could not be relied upon to cure the secured party's contractual breach under the deed of trust or immunize the secured party from liability to the borrower for her loss of equity in the parcel wrongfully sold in foreclosure. See Bayview, 275 Va. at 122.

[12] Jones' counsel explained the claim further in arguing in opposition to the McDaniels' motion for summary judgment:
> I'm saying their collection action was unlawful. They weren't allowed to conduct a collection action because they really didn't hold title to [the] property. There's been no determination that they hold title to [the] property so they couldn't really be a landlord under the law. So it was an unlawful action to even collect rent and it's certainly an unlawful action to collect debt and bring an unlawful detainer action when the issue of title has not been settled.

(Hearing 2/2/10.)

the question of title (or who owns the property) is not dispositive of the questions of possession and rent. CorAman paid $139,000 for the property at foreclosure, which paid off the first and second deeds of trust, yet the Joneses continue to live on the property claiming that it is theirs and denying that they owe rent, despite signing leases after consulting with counsel. Whatever validity Jones' claims against the holders of his second deed of trust and the substitute trustee might have had before Jones settled with them, it seems a stretch under the FDCPA to maintain that it is unlawful for CorAman – the purchaser at the foreclosure – to assert that it holds title and to attempt to collect rent. Indeed, irrespective of the validity of the foreclosure sale and whether or not Jones retains title, CorAman paid off the first and second deeds of trust, and assuming it is a bona fide purchaser for value, should have an equitable lien entitling it to payment. See Sands v. Lynham, 68 Va. 291 (1876) (purchaser in good faith "had right to be substituted to all the rights and remedies of the creditor whose debt was paid by the proceeds of sale").[13] Second, the clearest (and perhaps only) indication of whether Jones was entitled to possession or owed rent is irrefutably expressed in the Rockingham County Circuit Court's judgment, which necessarily found that he was not entitled to possession and that he owed rent.[14] Consequently, Jones begins

---

[13] The quiet title allegations in the complaint Jones filed in state court acknowledge as much. According to that complaint, Jones seeks to declare that he is the sole owner of the property and that he holds title free and clear, "except to the extent of any obligation to effectively buy out CorAman . . . for having retired the mortgages." (Circuit Court Compl. ¶ 87.)

[14] The court also notes that it is difficult to accept Jones' premise that he does not owe rent without determining that the Circuit Court of Rockingham County erred in granting judgment for CorAman in its first unlawful detainer action. In analogous circumstances, the Court of Appeals for the Seventh Circuit has found a FDCPA claim barred by the Rooker-Feldman doctrine, "even in light of the narrowing of Rooker-Feldman in [Exxon Mobil Corp. v. Saudi Basic Indus., 544 U.S. 280 (2005)]." See Kelly v. Med-1 Solutions, LLC, 548 F.3d 600, 605 (7th Cir. 2008). Nevertheless, this court does not rest its decision concerning this claim on Rooker-Feldman. Rather, it simply rejects Jones' wholly unsupported premise that he is entitled

with that determination and hard fact as a starting point as to the first alleged violation and then fails to identify with any specific factual support an abusive, misleading, or improper debt collection practice.

### B.

According to Jones' remaining FDCPA claim, Jones paid off the judgment CorAman obtained against him in the first unlawful detainer action, and the McDaniels nevertheless are falsely reporting to the credit bureau that he still owes it. He surmises that the "defendants must still be communicating this false credit information, because it still appears on [his] credit report."[15] (Am. Compl. at 18.) He alleges that this is a violation of 15 U.S.C. § 1692e(8), which

---

to possession and that CorAman cannot require him to pay rent.

[15] Although we are here on the McDaniels' motion for summary judgment, it seems to this court that this is precisely the kind of bootstrapping logic the Supreme Court's most recent 12(b)(6) jurisprudence in Iqbal v. Ashcroft, 129 S.Ct. 1937, 1949-50 (2009), was intended to remedy. The "two working principles" that underpin Iqbal are:
> First, the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Rule 8 marks a notable and generous departure from the hyper-technical code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not show[n]-that the pleader is entitled to relief.

Id. (citations omitted). Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled the assumption of truth." Id. at 1950. Then, the court should assume the veracity of well-pleaded factual allegations, if there are any, and "determine whether they plausibly give rise to an entitlement to relief." Id. "This approach recognizes that 'naked assertions' of wrongdoing necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief.'" Francis v.

prohibits the false reporting of credit information.[16] The McDaniels have filed affidavits denying that they "ever communicated with any credit reporting agency regarding [Jones]," and Jones has offered nothing suggesting otherwise. "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . . ." Celotex Corp. v. Catrett, 477 U.S. 317, 324-25 (1986). The claim is factually unsupported, and the court will not belabor the point further and will enter summary judgment as to the claim.

### C.

The McDaniels also maintain that they are not debt collectors under the FDCPA because they were not attempting to collect the debt of another but rather the debt of CorAman, their own member-managed LLC. Jones responds that because CorAman is a separate entity, the McDaniels are simply wrong in claiming that they were not attempting to collect the debt of another and that they are debt collectors under the Act. The court agrees with the McDaniels that, as members of a member-managed LLC, they were not debt collectors when they collected rent on behalf of their company in the company's name.

The FDCPA defines the term "debt collector" as "any person . . . in any business the principal purpose of which is the collection of any debt, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15

---

Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (citing Twombly, 550 U.S. at 557). The court notes that a number of Jones' state law claims, including a conspiracy claim he raises pursuant to Va. Code § 18.2-499(B), would be deficient under Iqbal.

[16] "Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed" is a violation of 15 U.S.C. § 1692e(8).

11

U.S.C. §1692a(6). There are a number of important exclusions from this definition,[17] including an exclusion for a creditor collecting its own accounts in its own name. See 15 U.S.C. § 1692a(6)(F)(ii). However, there is "a limited exception to these exclusions for 'any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts.'" Chiang v. Verizon New England, Inc., --- F.3d ---, 2010 WL 431873 *12 (1st Cir. Feb. 9, 2010) (quoting 15 U.S.C.

---

[17] The statute also excludes from the definition of "debt collector" any officer or employee of a creditor who collects debts for a creditor in the name of the creditor. See 15 U.S.C. § 1692a(6)(A). Congress passed the FDCPA before the rise of LLCs. Technically speaking, a member of a member-managed LLC may not be either an officer or an employee, though it is hard to imagine Congress would not have intended to exclude LLC members in analogous positions from the definition of "debt collector." The court finds it unnecessary, however, to consider the issue here.
The court also notes that there is an exclusion for "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . is incidental to a bona fide fiduciary obligation . . . ." 15 U.S.C. § 1692a(6)(F)(i). For the bona fide fiduciary exclusion to apply, the person seeking to enforce the debt must have a bona fide fiduciary obligation in relation to the creditor, and the person's collection activities must be incidental to that fiduciary obligation. Rowe v. Educ. Credit Mgmt. Corp., 559 F.3d 1028, 1032-34 (9th Cir. 2009). "The 'incidental to' requirement means that the collection activity must not be 'central to' the fiduciary relationship." Id. at 1034; see also Wilson v. Draper & Goldberg, 443 F.3d 377 (4th Cir. 2006).
Although the bona fide fiduciary exclusion usually has been thought to apply only to "entities such as trust departments of banks, and escrow companies, see Wilson v. Draper & Goldberg, P.L.L.C., 443 F.3d 373, 377 (4th Cir. 2006) (citing FTC Official Staff Commentary On the Fair Debt Collection Practices Act, 53 Fed. Reg. 50097, 50103 (Fed. Trade Comm'n Dec. 13, 1988)), the court notes that the statutory language is not limited to banks and escrow companies, and therefore, the court sees no reason why the exclusion could not apply under the circumstances present here. A member of a member-managed LLC has a broad range of fiduciary obligations to the LLC in managing the LLC's affairs. See generally, Flippo v.CSC Assoc. III, LLC, 262 Va. 48 (2001). When a member incidentally attempts to collect a debt owed to the LLC in furtherance of the LLC's business that member is not acting as a debt collector as defined by the FDCPA because the member's conduct fits within the literal language of 15 U.S.C. §1692a(6)(F). That member has a bona fide fiduciary relationship with the LLC and his collection efforts are incidental, not central, to that relationship. Nevertheless, the court does not rest its determination that the McDaniels are not debt collectors on this ground.

§1692a(6)). "Th[is] exception was designed to combat 'flat-rating,' whereby creditors attempt to intimidate debtors by creating the false impression that a third party is participating in the debt collection process." Id.

The exclusions from the definition of "debt collector" are necessary to tailor the reach of the FDCPA to achieve its core purpose of "curb[ing] debt collection abuses by 'third-party' or 'independent' debt collectors." See S. Rep. No. 382, 95th Cong., 1st Sess. 2 (1977), *reprinted in* 1977 U.S.C.C.A.N. 1695, 6096. Congress did not intend the term to include "in-house collectors for creditors so long as they use the creditor's true business name in collecting." Id. at 1695, 1698. With these precepts in mind, the court turns to the application of the exclusion applicable to the case at hand.

The McDaniels are excluded from the definition of "debt collector" because they were attempting to collect CorAman's debts in CorAman's name. The lease was in CorAman's name, Rebecca McDaniel clearly signed that lease as CorAman's agent, the unlawful detainer actions were brought in CorAman's name, and the judgments were in CorAman's name. Accordingly, the McDaniels are not "debt collectors" under the FDCPA based on this exclusion.

Jones, nevertheless, argues that the McDaniels are "debt collectors" because they used their own names in collecting CorAman's debt, which excepts their conduct from 15 U.S.C. § 1692a(6)(F)'s exclusions. The evidence he relies on to support this argument boils down to this: on an unspecified number of occasions the Joneses made rent checks payable to the McDaniels rather than CorAman until the McDaniels instructed them to make the checks directly payable to CorAman. As this court previously stated, the exception Jones relies upon to except the McDaniels' conduct from the otherwise applicable exclusions "was designed to combat 'flat-

13

rating,' whereby creditors attempt to intimidate debtors by creating the false impression that a third party is participating in the debt collection process."[18] Chiang, 2010 WL 431873 at *12. The fact that the Joneses made some checks payable to the McDaniels until the McDaniels instructed the Joneses to do otherwise creates no issue of fact whatsoever that the McDaniels engaged in a form of misleading or even potentially misleading conduct. Moreover, the fact that the *Joneses used* the McDaniels' names in paying the debt does not mean that the *McDaniels used* their names as though they were the Joneses' creditors.

For the reasons stated, the McDaniels were not acting as "debt collectors" under the FDCPA and on that additional ground are not liable under that Act.

### III.

The McDaniels further contend that the court should decline to exercise its jurisdiction over the supplemental state claims because they raise novel or complex issues of Virginia law and because they substantially predominate over Jones' federal claims. The court agrees.[19]

District courts may decline to exercise supplemental jurisdiction over state law claims if those claims raise novel or complex issues of state law or if they "substantially predominate" over the claim or claims that are within the court's original jurisdiction. See 28 U.S.C. § 1367(c)(1) & (2). A state claim substantially predominates if the claim over which the court has original jurisdiction "is only an incident or adjunct of the state claim and [] the state claim is the

---

[18] The court also notes that the exception to the exclusion upon which Jones relies applies on its face only to creditors, see generally Maguire v. Citicorp Retail Servs., 147 F.3d 232, 235 (2d Cir. 1998), and the McDaniels are not creditors.

[19] In addition to Jones' state claims, the court also declines to exercise supplemental jurisdiction over the Baughers' cross-claim against Neher and their third party complaint against Olde Dominion Title and Escrow, LLC.

crux of the action." Spaulding v. Mingo County Bd. of Educ., 897 F. Supp. 284, 289 (S.D. W.Va. 1995); see also Borough v. W. Mifflin v. Lancaster, 45 F.3d 780, 790 (3rd Cir. 1995) (noting that to substantially predominate, the state claim must be "more important, more complex, more time consuming to resolve, or in any other way more significant than [its] federal counterpart[]").

Jones first filed suit in the Circuit Court of Rockingham County asserting ten different claims arising out of the foreclosure sale of his property. All of those claims are grounded in Jones' assertion that the foreclosure sale was improper under Virginia law and a number of them are also grounded in his assertion that he retains title. Both assertions involve novel or even complex issues of state law that may have far-reaching implications. Those same assertions underpin his state law claims here. Indeed, Jones' counsel described in oral argument the "determination of title" as "the key issue here." (Hearing 2/2/10.) Under the circumstances, it is clear that Jones' state law claims and the McDaniels' and CorAman's defenses to those claims require a much broader range of factual development than Jones' FDCPA claim that remains against CorAman (which has not filed a motion for summary judgment).[20] Accordingly, the court concludes that Jones' state law claims involve novel and potentially complex issues of state law and that those claims substantially predominate over his FDCPA claim, and therefore, the court declines to exercise supplemental jurisdiction over them pursuant to 28 U.S.C. § 1367(c)(1) and (2).[21]

---

[20] The same reasoning applies with even greater force in relation to Heritage Title, which is not a defendant in Jones' FDCPA claim.

[21] Jones has moved for summary judgment against CorAman as to his wrongful foreclosure and quiet title claims. That motion is moot in light of the fact that the court is

## IV.

For the reasons stated, the court grants the McDaniels' motion for summary judgment and dismisses all supplemental state claims without prejudice.

**Enter:** This 3rd day of March 2010.

_____
UNITED STATES DISTRICT JUDGE

---

declining to exercise supplemental jurisdiction over Jones' state law claims.